UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IKIA TRUESDALE,

    *Plaintiff*,

v.

DISTRICT OF COLUMBIA,

    *Defendant.*

No. 21-cv-315 (DLF)

## MEMORANDUM OPINION

Ikia Truesdale brings this employment discrimination action against her employer, the District of Columbia. She alleges that while working for the Metropolitan Police Department (MPD) she was subjected to disparate treatment based on her race and gender, a hostile work environment, and retaliation in violation of Title VII. Before the Court is the District's Motion to Dismiss, Dkt. 8. For the reasons that follow, the Court will grant the motion.

**I.     BACKGROUND**[1]

Truesdale is an African American woman, who began working as a police officer for MPD in 2016. Compl. ¶¶ 1, 5–7, Dkt. 1. MPD assigned her to a "special beat" in the Fifth District, where she was required to remain within a certain geographic area during prescribed hours. *Id.* ¶¶ 6, 8.

The underlying events that give rise to Truesdale's claims began on February 18, 2019, when Sergeant Ennis Jervic, Truesdale's supervisor, instructed her via police radio "to remain where she was and note her mileage per proper procedure." *Id.* ¶¶ 11–12, 18. When Jervic

---

[1] On a Rule 12(b)(6) motion, the Court assumes the truth of material factual allegations in the complaint. *See Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

1

arrived at Truesdale's location, he stated that he saw a vehicle traveling on a nearby street and believed it to be Truesdale's vehicle. *Id.* ¶¶ 13–14. In "a professional and inoffensive demeanor and tone," Truesdale stated that "it was not here [sic] vehicle." *Id.* ¶ 15. Because Jervic "didn't like her tone," she was asked to write a report on the incident. *Id.* ¶ 16.

As a result of the February 18 incident with Jervic, Truesdale was placed under investigation. *Id.* ¶ 19. The investigation was resolved in June 2019 with a finding of "no preponderance/no discipline." *Id.* ¶ 34. As a further result of the incident with Jervic, in July 2019, Truesdale was subjected to the Supervisory Support Program (SSP). *Id.* ¶¶ 36, 39. Sergeant Michael Lybarger, one of Truesdale's supervisors, was tasked with completing her SSP Assessment. *Id.* ¶¶ 40–41. Lybarger was friends with Jervic and likely spoke with him about Truesdale while completing the assessment. *Id.* ¶¶ 41–42, 44. In August 2019, "the SSP Assessment was drafted against [Truesdale] and assessed her performance with the MPD." *Id.* ¶ 47. Truesdale alleges that a similarly situated white male officer, "Officer Glen," received preferential treatment in regards to leaving his assigned geographic area. *Id.* ¶¶ 20–22.

On February 18, 2019, the day of the incident with Jervic, Truesdale went to Lieutenant Patrick Brescia to request mediation due to the incident and told him that she had "been having ongoing issues" with Jervic. *Id.* ¶¶ 17–18. Additionally, in March 2019, Truesdale submitted a complaint against Jervic regarding the February 18 incident. *Id.* ¶ 23. In June 2019, Truesdale also submitted "a claim of workplace discrimination related to harassment, hostile work environment, and discipline" against Jervic to the MPD Equal Employment Opportunity (EEO) Investigations Division. *Id.* ¶ 33.

In April 2019, Truesdale requested approval for outside employment through the proper channels, and an administrative sergeant informed Truesdale that the paperwork takes at most

approximately seven days to process. *Id.* ¶¶ 27–28. A white male officer, Officer Leehigh, requested approval for outside employment through the proper channels, and his request allegedly was approved in no more than seven days. *Id.* ¶¶ 30–32. In June, Truesdale learned that her outside employment paperwork had been preliminarily denied due to the investigation against her. *Id.* ¶ 35. However, Truesdale's outside employment paperwork still had not been processed more than two weeks after the investigation concluded. *Id.* ¶¶ 34, 37.

In October 2019, Lybarger completed Truesdale's officer performance Rating Form, giving her a rating of "Needs Improvement." *Id.* ¶¶ 50, 52. Two days later, Truesdale submitted an MPD EEO complaint against Lybarger relating to discipline and hostile work environment. *Id.* ¶ 51. Approximately a week later, Truesdale learned that Lybarger changed her rating to "Meets Expectations." *Id.* ¶ 53. The following day, Truesdale filed an appeal regarding the rating and alleging "that she had been subjected to a hostile work environment." *Id.* ¶ 54. She claims that "[t]he changing of the rating, the failure to comply with proper procedure, and the initiation of the entire SSP even though the claims belying it were dismissed with a verdict of 'no preponderance/no discipline', signal the lack of veracity behind the SSP in its entirety and Sgt. Lybarger's assessment." *Id.* ¶ 56.

In December 2019, the Professional Conduct and Intervention Board compiled a review of Truesdale, *id.* ¶ 58, and recommended that Truesdale "be place [sic] on a Performance Improvement Plan," have her body cameras reviewed weekly, and be subjected to increased supervision, *id.* ¶ 60. These recommendations were made based on the findings of Lieutenant Kopp who had participated in Truesdale's SSP Assessment and who was friends with Jervic and Lybarger. *Id.* ¶¶ 44, 48, 59–60. Truesdale's pleading does not state whether these recommendations were implemented.

3

Due to these circumstances, Truesdale left her MPD district and now works for a different district. *Id.* ¶¶ 7, 61. She has exhausted her administrative remedies. *Id.* ¶¶ 62–65. She was mailed her right-to-sue letter on November 5, 2020, and filed the instant case on February 3, 2021. *See id.* ¶ 65; *see generally* Compl. On April 13, 2021, the District moved to dismiss the entirety of Truesdale's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See generally* Mot. to Dismiss. That motion is now ripe for review.

## II. LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss the complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). A complaint need not contain "detailed factual allegations," but alleging "facts that are merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The Court must "accept as true" all the factual allegations in the plaintiff's complaint, *id.*, and "grant[] the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). The Court need not accept, however, any "legal conclusion [that is] couched as a factual allegation." *Iqbal*,

556 U.S. at 678 (internal quotation marks omitted).  Likewise, the Court will not credit an "unadorned, the-defendant-unlawfully-harmed-me accusation," or a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements." *Id.* Ultimately, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III.   ANALYSIS[2]

The District moves to dismiss the three counts in Truesdale's complaint.  Mot. to Dismiss at 1.  First, it argues that Truesdale's disparate treatment (Count I) and retaliation (Count III) claims fail because she has not alleged a material adverse action for either count.  *Id.*  Second, it argues that Truesdale's hostile work environment claim (Count II) should be dismissed because she has not alleged sufficiently severe or pervasive intimidation, ridicule, and insult.  *Id.*  The Court will address each in turn.

---

[2] In her opposition, Truesdale requests leave to amend her complaint if the Court grants any part of the District's Motion to Dismiss.  Pl.'s Opp'n to Mot. to Dismiss at 12, Dkt. 9 (citing Fed. R. Civ. P. 15(a)).  But a motion for leave to file an amended complaint must comply with Federal Rule of Civil Procedure 15(a)(2) and Local Civil Rule 15.1.  "While Federal Rule 15(a) provides that leave to amend shall be freely given when justice so requires, a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)."  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1280 (D.C. Cir. 1994) (quoting *Confederate Mem'l Ass'n v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993)) (internal quotations and alterations omitted); *see also* Local Civ. R. 15.1 (motion for leave to amend must "attach, as an exhibit, a copy of the proposed pleading as amended").  If Truesdale seeks to amend her complaint, she must seek the Court's leave to amend, in accordance with the Federal and Local Civil Rules.

### A.     Disparate Treatment and Retaliation Claims (Counts I & III)

In Count I of her complaint, Truesdale alleges that she was subjected to discrimination through disparate treatment, Compl. ¶¶ 67–73, and in Count III, she alleges that she was subjected to retaliation for her complaints against Jervic and Lybarger, *id.* ¶¶ 82–89.

To establish a disparate treatment employment discrimination claim under Title VII, Truesdale must show that "(i) [she] suffered an adverse employment action (ii) because of [her] race, color, religion, sex, or national origin." *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008) (Kavanaugh, J.). An employer's action is sufficiently adverse for a *discrimination* claim only if it causes "a significant change in employment status"—e.g., "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Baird v. Gotbaum*, 662 F.3d 1246, 1248 (D.C. Cir. 2011) (internal quotation marks omitted). The action must cause the employee "materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Id.* at 1248–49 (internal quotation marks omitted).

To establish a retaliation claim under Title VII, Truesdale must show that (i) she suffered "a materially adverse action" (ii) because she "brought or threatened to bring a discrimination claim." *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008) (Kavanaugh, J.). But for her retaliation claim, Truesdale need not show that the adverse action "affect[ed] the terms and conditions of [her] employment." *Baird*, 662 F.3d at 1249 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006)). She must show only that it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (internal quotation marks omitted). "[W]hile the scope of actions covered by Title VII's

6

substantive provision and its anti-retaliation provisions differ, the magnitude of harm that plaintiff must suffer does not"—in both cases, the plaintiff must suffer "objectively tangible harm." *Hornsby v. Watt*, 217 F. Supp. 3d 58, 66 (D.D.C. 2016) (citations omitted).

In support of her disparate treatment employment discrimination claim, Truesdale points to the SSP Assessment, the investigation, the "different degree to which [she] was held regarding her location and the general orders," and the delay in processing her outside employment paperwork. Compl. ¶ 70. For her retaliation claim, Truesdale points to the same actions except that she omits the allegations regarding differential treatment. *See id.* ¶ 87. Viewing these allegations as true and in the light most favorable to Truesdale, *see Hettinga*, 677 F.3d at 476, none of her allegations meet the definition of an adverse action sufficient to support either claim.

First, the "differential degree to which [Truesdale] was held regarding her location and the general orders," Compl. ¶ 70, does not constitute an adverse action because it did not cause "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a . . . significant change in benefits," *Baird*, 662 F.3d at 1248 (quoting *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009)); *see also Edwards v. EPA*, 456 F. Supp. 2d 72, 86 (D.D.C. 2006) (requiring "discernible, as opposed to a speculative, effect on the terms, conditions, or privileges of one's employment").

And any negative impact caused by the SSP assessment and investigation is too speculative to be actionable. *See Bridgeforth v. Jewell*, 721 F.3d 661, 663–65 (D.C. Cir. 2013) (rejecting as unduly speculative a claim based on failure to nominate an employee for "time-off awards"). Truesdale does not allege that either caused, or could have caused, her any career or financial impact. To the extent that Truesdale alleges that the SSP assessment and investigation led to increased supervision, Compl. ¶ 60, neither constitutes an adverse employment action. *See*

*Guillen-Perez v. District of Columbia*, 415 F. Supp. 3d 50, 63 (D.D.C. 2019) (finding increased scrutiny did not constitute an adverse employment action). To be adverse, a negative performance appraisal "must affect the employee's 'position, grade level, salary, or promotion opportunities.'" *Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009) (quoting *Baloch*, 550 F.3d at 1199); *Baloch*, 550 F.3d at 1199 ("[P]erformance reviews typically constitute adverse actions only when attached to financial harms."). Further, Truesdale does not allege that the SSP assessment contained any abusive language. *See Baloch*, 550 F.3d at 1199 (considering absence of abusive language as weighing against finding a performance review to be an adverse action). To the extent Truesdale alleges that the SSP assessment, investigation that followed, and review thereof led to her placement on a Performance Improvement Plan (PIP), Compl. ¶ 60, for the same reasons, the PIP also does not constitute an adverse employment action, *see Taylor v. Small*, 350 F.3d 1286, 1292–93 (D.C. Cir. 2003).

Finally, the delays in processing Truesdale's outside employment paperwork are not materially adverse because "delays in personnel actions—similar to the effect of performance evaluations—are materially adverse only when they result in independent, tangible effects such as endangering compensatory or advancement potential." *Tyes-Williams v. Whitaker*, 361 F. Supp. 3d 1, 13 (D.D.C. 2019) (internal quotation marks omitted). Truesdale has not alleged any such harm. *See Burlington N.*, 548 U.S. at 67 ("The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."); *Tyes-Williams*, 361 F. Supp. 3d at 13 (finding delay in approving transfer did not constitute adverse action where plaintiff did not allege effect on "compensation or career trajectory").

Because Truesdale has failed to allege a materially adverse action, dismissal of her disparate treatment and retaliation claims is appropriate.

### B.     Hostile Work Environment Claim (Count II)

In Count II of her complaint, Truesdale alleges she was subjected to a hostile work environment.  Compl. ¶¶ 74–81.  A hostile work environment exists where a plaintiff's employer subjects her to "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Baloch*, 550 F.3d at 1201 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  In assessing whether there is a hostile work environment, "court[s] look[] to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance."  *Baloch*, 550 F.3d at 1201.  "The Supreme Court has made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment."  *George v. Leavitt*, 407 F.3d 405, 416 (D.C. Cir. 2005) (internal quotation marks omitted).  This prevents Title VII from becoming "a general civility code" that regulates "the ordinary tribulations of the workplace."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks omitted).

To support her hostile work environment claim, Truesdale points to no instances of abusive, threatening, or humiliating conduct.  *See generally* Compl.  Instead, she alleges that she was subjected to harassment including investigations, false critiques of her abilities, scrutiny that "similarly situated officers did not receive," and a delay in processing her outside employment paperwork.  Compl. ¶ 77.  Even considering her allegations together, in the light most favorable to Truesdale, they do not show a "severe and pervasive pattern of harassment," *Outlaw v. Johnson*, 49 F. Supp. 3d 88, 92 (D.D.C. 2014), that "create[d] an abusive working environment," *Baloch*, 550 F.3d at 1201 (quoting *Harris*, 510 U.S. at 21).

First, Truesdale has not shown that any of the alleged actions severely affected her day-to-day working environment. Although she alleges that she was investigated and received poor performance evaluations, Compl. ¶ 77, "[c]riticisms of a subordinate's work and expressions of disapproval . . . are the kinds of normal strains that can occur in any office setting," *Singh v. U.S. House of Representatives*, 300 F. Supp. 2d 48, 56 (D.D.C. 2004); *see also Outlaw*, 49 F. Supp. at 91–92 (finding denial of promotions, hiring at a lower initial grade, and subjective job-performance reviews insufficient to survive motion to dismiss hostile work environment claim); *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) ("[T]he removal of important assignments, lowered performance evaluations, and close scrutiny of assignments by management [cannot] be characterized as sufficiently intimidating or offensive in an ordinary workplace context."). And even accepting as true that Truesdale was subjected to more scrutiny than other employees and experienced delays in the processing of her outside employment paperwork, Compl. ¶ 77, there is no indication that either interfered with her ability to perform her job or was sufficiently severe to support a hostile work environment claim.

Second, the allegations on which Truesdale relies to support her hostile work environment claim are nearly identical to those she relies on to support her discrimination and retaliation claims. *Id.* ¶¶ 70, 87. "As a general matter," plaintiffs cannot "bootstrap their alleged discrete acts of retaliation [or disparate treatment] into a broader hostile work environment claim." *Baloch v. Norton*, 517 F. Supp. 2d 345, 364 (D.D.C. 2007), *aff'd sub nom. Baloch v. Kempthorne*, 550 F.3d 1191 (D.C. Cir. 2008); *see also Hampton v. Vilsack*, 760 F. Supp. 2d 38, 57 (D.D.C. 2011), *aff'd*, 685 F.3d 1096 (D.C. Cir. 2012) ("Plaintiff cannot . . . rely on the discrete acts upon which he bases his discrimination and retaliation claims to support a hostile work environment claim.").

Although Truesdale further alleges that she told Brescia "that she has been having ongoing issues with her supervisor, Sgt. Jervic. . . .," Compl. ¶ 18, she provides little detail about these alleged issues. And to the extent that she has provided any detail at all, her issues with Jervic appear to be no more than "'personality conflicts'" that "courts [have] frequently deem[ed] uncognizable under Title VII." *Baird v. Gotbaum*, 792 F.3d 166, 171 (D.C. Cir. 2015) (quoting *Burlington N.*, 548 U.S. at 68).

In sum, even considered together, the allegations in the complaint do not support a hostile work environment claim.

## CONCLUSION

For the foregoing reasons, the District's motion to dismiss is granted. An order consistent with this decision accompanies this memorandum opinion.

*[signature]*

DABNEY L. FRIEDRICH
United States District Judge

March 30, 2022