UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IKIA TRUESDALE,

    *Plaintiff*,

v.

DISTRICT OF COLUMBIA,

    *Defendant*.

No. 21-cv-315 (DLF)

**MEMORANDUM OPINION**

Plaintiff Ikia Truesdale brings this employment action against the District of Columbia. Before the Court is the District's Motion to Dismiss Plaintiff's Amended Complaint, Dkt. 18. For the reasons that follow, the Court will grant the District's motion in part and deny it in part.

**I.    BACKGROUND**[1]

Truesdale is an African-American woman who started working for the District as a police officer in September 2016. Am. Compl. ¶¶ 6, Dkt. 17. In February 2019, her supervisor, Sergeant Ennis Jervic, "falsely accused" her of leaving her assigned location. *Id.* ¶ 14. When Truesdale tried to explain herself, Sergeant Jervic "took offense." *Id.* ¶ 17. Truesdale complained to her superior, Lieutenant Patrick Brescia, that Sergeant Jervic had discriminated against her on the basis of race and gender. *Id.* ¶ 18.

"Shortly after" Truesdale's complaint, Lieutenant Brescia placed her under investigation for the February 2019 incident, ostensibly for "Insubordination" and "Orders/Directives

---

[1] In resolving the District's motion to dismiss, the Court has assumed the truth of the material factual allegations in the amended complaint, *see Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), and any documents attached to the amended complaint or incorporated by reference, *see EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

Violations." *Id.* ¶ 19. On June 14, 2019, this investigation was resolved in Truesdale's favor with a disposition of "No preponderance/no discipline." *Id.* ¶ 30.

While the investigation was ongoing, on April 25, 2019, Truesdale submitted a request to accept outside employment. *Id.* ¶ 23. "Officers with police agencies commonly supplement their income by engaging in outside related employment . . . and are routinely given permission to do so as standard pattern or practice" of the Department. *Id.* Indeed, General Order 201.17 of the Metropolitan Police Department states: "The . . . Department recognizes the benefits of outside employment, both to its members and to the community. . . . The policy of the Metropolitan Police Department is that members of the Department may engage in outside employment." *Id.* ¶ 24 (omission in original). After her request was submitted, Truesdale was informed that "outside employment requests take approximately seven days to be processed." *Id.* ¶ 25. However, her request was neither granted nor adjudicated within seven days; instead, it was denied "pending the result of the [ongoing] investigation." *Id.* ¶ 26. In response, Truesdale submitted an intake form to the Equal Employment Opportunity Commission claiming that, among other things, this denial of outside employment was discriminatory and retaliatory. *Id.* ¶ 27.

On June 15, 2019, after the investigation was resolved, Truesdale again sought processing of her request. *Id.* ¶ 31. Her request was recommended for approval on June 28, 2019. *Id.* ¶ 32. But, on July 2, 2019, she was placed in the Supervisory Support Program, which "again disqualified [her] from engaging in outside employment." *Id.* ¶¶ 33, 35. According to Truesdale, the police department's written policies did not justify placing her in the Supervisory Support Program, and her supervisors' proffered justifications for doing so violated the department's written policies. *Id.* ¶¶ 40–42.

Later, on October 23, 2019, Truesdale received a "Needs Improvement" performance rating. *Id.* ¶ 48. That rating was later adjusted upwards to "Meets Expectations," shortly after Truesdale submitted another Equal Employment Opportunity complaint. *Id.* ¶¶ 50–51.

Finally, on December 2, 2019, another superior submitted a Professional Conduct and Intervention Board Review against Truesdale to the Professional Conduct and Intervention Board. *Id.* ¶ 52. The resulting review led the Board to place Truesdale on a Performance Improvement Plan that would require "review [of] her body worn cameras weekly" and "increased supervision." *Id.* ¶ 54.

On February 3, 2021, Truesdale filed her initial complaint against the District alleging that it had violated Title VII by unlawfully discriminating and retaliating against her, including by subjecting her to a hostile work environment. Dkt. 1. The Court granted the District's motion to dismiss this complaint. Mem. Op., Dkt. 13. It held that Truesdale's discrimination and retaliation claims failed because she "failed to allege a materially adverse action." *Id.* at 8. It also dismissed her hostile work environment claim because her allegations did not show a severe and pervasive pattern of harassment. *Id.* at 9.

Truesdale filed an amended complaint. Dkt. 17. The District now moves to dismiss the amended complaint. Dkt. 18.

**II.   LEGAL STANDARDS**

Rule 12(b)(6) allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 557 ("Factual allegations must be enough to raise a right to relief above the speculative level."). A complaint need not contain "detailed factual allegations," but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). The assumption of truth does not apply, however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quotation marks omitted). An "unadorned, the defendant-unlawfully-harmed-me accusation" is not credited; likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Ultimately, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III.   ANALYSIS

#### A.   Discrimination

To state an unlawful discrimination claim under Title VII, a plaintiff must plausibly allege that "(i) [she] suffered an adverse employment action (ii) because of [her] race, color, religion, sex, or national origin." *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008). The Circuit recently clarified that an employer's action need only "affect[] an employee's terms,

4

conditions, or privileges of employment" to constitute an adverse action sufficient to support a discrimination claim. *Chambers v. District of Columbia*, 35 F.4th 870, 877 (D.C. Cir. 2022) (en banc) (quoting 42 U.S.C. § 2002e-2(a)(1)). "The plain text of Title VII requires no more." *Id.* at 875. This standard is "capacious" and "evince[s] an intent to strike at the entire spectrum of disparate treatment in employment." *Id.* at 874 (cleaned up).

Some of the District's actions alleged in the amended complaint still do not constitute adverse actions. Subjecting Truesdale to "excessive supervision," Am. Compl. ¶ 59, and placing her on a Performance Improvement Plan, *id.* ¶ 74, "fall into the category of a supervisor's ordinary workplace exercise of authority that [do] not adversely affect the conditions of [a plaintiff's] employment." *Heavans v. Dodaro*, No. 22-cv-836, 2022 WL 17904237, at *8 (D.D.C. Dec. 23, 2022).

But the District's investigation of Truesdale and its placement of Truesdale in the Supervisory Support Program do constitute adverse employment actions. At least as alleged in the amended complaint, these actions prevented Truesdale from taking advantage of a "routinely granted" "standard benefit and condition of employment" at the department—namely, "permission to engage in outside employment." Am Compl. ¶¶ 23–24. They therefore affected Truesdale's terms, conditions, and privileges of employment. *See Liu v. Georgetown University*, No. 22-cv-157, 2022 WL 2452611, at *6 (D.D.C. July 6, 2022) (denial of an opportunity to present research results at professional conferences deemed to be an adverse employment action where the privilege "attached specifically to [the plaintiff's] position or . . . office").

Further, Truesdale has also sufficiently alleged that the District's actions were taken on the basis of her sex and race. Specifically, she alleges that the investigation against her was unfounded and discriminatory because "similarly situated males were not subjected to discipline for the same

5

alleged conduct." Am. Compl. ¶¶ 22. She further alleges that her placement in the Supervisory Support Program was discriminatory because she had already been exonerated from any investigation, so her placement in the program violated the District's written policies. *Id.* ¶¶ 35–42, 61. Most importantly, she identifies at least two white male officers, including one of the same rank, who "did not face discipline for engaging in the same conduct." *Id.* ¶¶ 20–21. Though these allegations are minimal, they are sufficient to satisfy causation at the pleading stage. *See Fennell v. AARP*, 770 F. Supp. 2d 118, 127–28 (D.D.C. 2011) (plaintiff sufficiently alleged termination was discriminatory where he "alleged that his job performance . . . was impeccable" and "identifie[d] three allegedly similarly situated white employees, and one similarly situated female employee, who engaged in comparable conduct but were not treated in alike manner").

Because Truesdale has sufficiently pleaded a plausible discrimination claim, the Court will deny the District's motion to dismiss Count I of the amended complaint.

### B. Retaliation

To adequately plead a retaliation claim under Title VII, a plaintiff "must [allege] (1) that [she] engaged in statutorily protected activity; (2) that [she] suffered a materially adverse action by [her] . . . employer; and (3) that a causal link connects the two." *Howard R.L. Cook & Tommy Shaw Found. for Black Emps. of Library of Cong., Inc. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013). To allege that she suffered a materially adverse action, a plaintiff must allege that the action "well might . . . dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Baird v. Gotbaum*, 662 F.3d 1246, 1249 (D.C. Cir. 2011) (internal quotation marks omitted). The action need not "affect the terms and conditions of employment," *id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006)), but it must "result in tangible

6

job consequences like a change in pay, position, or promotional opportunities," *Heavans*, 2022 WL 17904237, at *9.

As with Truesdale's discrimination claim, the District's actions also constitute adverse actions sufficient to support a retaliation claim.  Truesdale alleges that the District subjected her to "unfair insubordination investigations," placed her in the Supervisory Support Program "in violation of written . . . policy," and thereby prevented her from taking outside employment.  Am. Compl. ¶ 75.  Not only did these actions deny her a standard benefit of her employment, but they also resulted in lost income.  *Id.* ¶ 76. The financial harm resulting from these actions constitutes a tangible consequence sufficient to dissuade a reasonable employee from engaging in protected activities.  *See Cogdell v. Murphy*, No. 19-2462, 2020 WL 6822683, at *13 (D.D.C. Nov. 20, 2020) ("A denial of a request for several weeks of advanced sick leave that costs a significant portion of [the employee's] monthly salary is an action that could well dissuade a reasonable worker from making or supporting a charge of discrimination." (internal quotation marks omitted)).

The District's arguments otherwise are unpersuasive.  It is true that the instigation of an investigation alone may not be an adverse action.  *See Runkle v. Gonzales*, 391 F. Supp. 2d 210, 226–27 (D.D.C. 2005).  But an investigation can become actionable if, as here, it results in "materially adverse consequences . . . such that a reasonable trier of fact could conclude that the plaintiff had suffered objectively tangible harm," *King v. Holder*, 77 F. Supp. 3d 146, 151–52 (D.D.C. 2015); *see also Douglas v. Donovan*, 559 F.3d 549, 553 (D.C. Cir. 2009).  One such "objectively tangible harm" is a financial impact, *Douglas*, 559 F.3d at 553; *Russell v. Principi*, 257 F.3d 815, 819 (D.C. Cir. 2001), which Truesdale has alleged here.  Her allegations are neither "conclusory" nor "speculative."  *See* Def.'s Reply at 3, Dkt. 22.  Accepting the truth of Truesdale's

allegations and granting all reasonable inferences in her favor, as the Court must, *see Cogdell*, 2020 WL 6822683, at *11, she has plausibly alleged an adverse action.

Further, that Truesdale worked for the American Psychological Association in April and May 2019, *see* Def.'s Mem. at 10, Dkt. 18, is irrelevant because she was allegedly barred from taking *additional* outside employment between April 25, 2019, when she submitted her request, Am. Compl. ¶ 12, and June 28, 2019, when her request was recommended for approval, *see* Def.'s Ex. C, Dkt. 18-3.  And even though the District eventually approved her outside employment requests on July 2, 2019, *see* Def.'s Mem. at 10; *see* Am. Compl. Ex. C, Dkt. 17-3, it immediately disqualified her from taking any outside employment when it placed her in the Supervisory Support Program on the very same date, Am. Compl. ¶ 33; see Ex. D, Dkt. 17-4.  It may be that, at a future stage of the proceedings, the evidence will show that Truesdale was able to accept outside employment earlier than she has alleged.  At this stage, however, the Court must assume the truth of Truesdale's allegations and grant all reasonable inferences in her favor.  *See Cogdell*, 2020 WL 6822683, at *11.

Truesdale has also sufficiently alleged the remaining elements of a retaliation claim.  She alleges that she twice participated in protected activity causally linked to an adverse action.  First, she reported Sergeant Jervic's behavior to Lieutenant Brescia, *id.* ¶ 65, and "[s]hortly after" she was placed under investigation "on . . . false grounds," *id.* ¶ 66.  Second, she submitted an Equal Employment Opportunity intake form, *id.* ¶ 27, and less than a month later, she was allegedly placed in the Supervisory Support Program in retaliation, *id.* ¶ 72.  At least at the motion to dismiss stage, these allegations of temporal proximity are sufficient to support a causal connection between Truesdale's protected activity and any adverse actions.  *See Holcomb v. Powell*, 433 F.3d 889, 903 (D.C. Cir. 2006) (recognizing a presumption of causation where "the employer had knowledge of

8

the employee's protected activity, and . . . the adverse [] action took place shortly after the activity"); *Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 77 (D.D.C. 2007) ("This Court has often followed a three-month rule to establish causation on the basis of temporal proximity alone.").

Because Truesdale has sufficiently pleaded a plausible claim for retaliation that can survive a motion to dismiss, the Court will deny the District's motion to dismiss Count II of the amended complaint.

C. **Hostile Work Environment**

To state a hostile work environment claim, a plaintiff must plausibly allege that her employer "subjected [her] to 'discriminatory intimidation, ridicule, and insult' that [was] 'sufficiently severe or pervasive to alter the conditions of [her] employment and create[d] an abusive working environment.'" *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The acts in question must be both (1) of sufficient severity or pervasiveness and (2) "adequately linked such that they form a coherent environment claim." *Menoken v. Dhillon*, 975 F.3d 1, 6 (D.C. Cir. 2020) (cleaned up). As to the former requirement, because Title VII is not a "general civility code," the conduct "must be [so] extreme [as] to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks and citation omitted). In assessing whether a hostile work environment exists, "courts consider the totality of the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Richardson v. Petasis*, 160 F. Supp. 3d 88, 126 (D.D.C. 2015) (quoting *Harris*, 510 U.S at 23).

In her amended complaint, Truesdale alleges that the District's actions, including subjecting her to "excessive supervision," denying the opportunity to engage in outside employment, assigning her to the Supervisory Support Program, and other "discriminatory and harassing treatment," were "so pervasive as to fundamentally alter the conditions of [her] employment." Am. Compl. ¶¶ 80–82. But these allegations are virtually identical to the allegations in her initial complaint that the Court already deemed not "sufficiently severe to support a hostile work environment claim." Mem. Op. at 10–11. Increased supervision and negative performance reviews are "work-related actions by supervisors," which, without more, "typically" are not "sufficient for a hostile work environment claim." *Munro v. LaHood*, 839 F. Supp. 2d 354, 366 (D.D.C. 2012); *see also Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) (dismissing hostile work environment claim based on employer's "interference with [the plaintiff's] work," "multiple failures to promote," denial of leave requests, and "discussions to end [the plaintiff's] eligibility for workers' compensation and to terminate his employment"); *Laughlin v. Holder*, 923 F. Supp. 2d 204, 216, 219–21 (D.D.C. 2013) (dismissing hostile work environment claim where the employer repeatedly failed to promote the plaintiff, interfered with her efforts to hire staff, "manipulated her performance evaluations, denied her bonuses to which she was entitled," and more).

Moreover, as alleged, the District's actions are also not sufficiently connected to support a hostile work environment claim. Truesdale's hostile work environment claim is based on the same allegations that form the basis for her discrimination and retaliation claims. *See* Am. Compl. ¶¶ 79–82. "[C]ourts have been hesitant to find a claim for hostile work environment when a complaint contains no allegations of discriminatory or retaliatory intimidation, ridicule, or insult . . . and relies instead on incidents of allegedly discriminatory non-promotions and other

10

performance-based actions." *Outlaw v. Johnson*, 49 F. Supp. 3d 88, 91 (D.D.C. 2014) (cleaned up); *Munro*, 839 F. Supp. 2d at 366 (dismissing claim where the plaintiff "sa[id] nothing about the nature of . . . disparate acts that would permit [the] Court to 'transform' them into a hostile work environment claim"). The Court will therefore grant the District's motion to dismiss Count III of the amended complaint.

## CONCLUSION

For the foregoing reasons, the Court grants the Secretary's motion to dismiss in part and denies it in part. A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

January 25, 2023